Timothy Sean Carr (FL Bar No. 1047538)
Timcarr81@gmail.com
4304 Blue Heron Drive
Ponte Vedra Beach, FL 32082
Tel: (516) 289-7585

Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHRISTINE CARR, individually and on behalf of all others similarly situated,

Plaintiffs

v.

HOUZZ INC., a Foreign Profit Corporation,

Defendant

No. 3:25-cv-503

**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF**

**CLASS ACTION**

Plaintiff Christine Carr ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant Houzz Inc. ("Houzz" or "Defendant") and alleges as follows:

## INTRODUCTION

1. This is a class action lawsuit against Houzz for its deceptive and misleading automatic renewal and negative option billing practices in violation of State Consumer Laws, including Florida law.

2. Houzz operates an online platform that provides services related to home design, improvement, and decoration. Houzz offers subscription services, including Houzz Pro and Houzz Essential, which Houzz markets as providing tools for users interested in home-related projects.

3. To induce consumers to purchase its subscription services, Houzz offers a "free trial" period. However, Houzz fails to adequately disclose that, at the end of the free trial period, consumers will be automatically enrolled in and charged for a 12-month subscription that cannot be canceled.

4. Houzz has engaged in unfair, deceptive, and unconscionable practices in connection with its automatic renewal subscription service in violation of state and federal consumer protection laws in each of the fifty states and the District of Columbia, including but not limited to: a. California's Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600-17606; b. New York's General Obligations Law § 5-903; c. Illinois Automatic Contract Renewal Act, 815 ILCS 601/1 et seq.; d. Colorado Consumer Protection Act, C.R.S. § 6-1-101 et seq.; e. Washington's Consumer Protection Act, RCW 19.86.010 et seq.; f. Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq.; g. Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8401 et seq.; h. Florida's Automatic Renewal Law, Fla. Stat. § 501.165; i. the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq.; j. Arkansas Home Service Contract Act, Ark. Code Ann. § 4-114-101 et seq.; k. Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq.; l. Connecticut Automatic Renewal Provisions in Consumer Contracts law, Conn. Gen. Stat. Ann. § 42-126b; m. Delaware Automatic Renewal Provisions law, Del. Code Ann. tit. 6, § 2505A; n. District of Columbia Automatic Renewal Provisions law, D.C. Code § 28A-203; o. Georgia Online Automatic Renewal Transparency Act, Ga. Code Ann. § 13-12-5; p. Hawaii Automatic Renewal Clauses law, Haw.

Rev. Stat. § 481-9.5; q. Idaho Automatic Renewal Contracts Act, Idaho Code § 48-603G; r. Iowa Physical Exercise Clubs law, Iowa Code § 552.1 et seq.; s. Louisiana Automatic Renewal of Consumer Contracts law, La. Rev. Stat. Ann. § 9:2716; t. Maine Automatic Renewal or Extension of Contracts law, Me. Rev. Stat. tit. 10, § 1210-C; u. Maryland Consumer Protection Act (health club contracts), Md. Code Ann., Com. Law § 14-12B-06; v. Minnesota Automatic Renewal Law, Minn. Stat. § 325G.298; w. New Mexico Service Contract Automatic Renewal law, N.M. Stat. Ann. § 57-12-15; x. New York Automatic Renewal Law, N.Y. Gen. Bus. Law § 527-a; y. North Carolina Automatic Renewal of Service Contracts law, N.C. Gen. Stat. § 75-41; z. North Dakota Automatic Renewal of Service Contracts law, N.D. Cent. Code § 51-37-01 et seq.; aa. Oregon Automatic Renewal of Service Contracts law, Or. Rev. Stat. § 646A.295; bb. South Carolina Automatic Renewal Law, S.C. Code Ann. § 39-5-45; cc. Vermont Automatic Renewal Provisions in Consumer Contracts law, 9 Vt. Stat. Ann. § 2454a; dd. Virginia Automatic Renewal Remedies Act, Va. Code Ann. § 59.1-207.45 et seq.; ee. Wisconsin Automatic Renewal of Business Contracts law, Wis. Stat. § 134.49; and ff. Similar state consumer protection and automatic renewal laws in other states.

5. Houzz's practices are currently subject to increasing regulatory scrutiny nationwide, as federal and state authorities have begun taking action against similar deceptive auto-renewal practices. The Federal Trade Commission ("FTC") and multiple state attorneys general have recently pursued enforcement actions against companies that engage in similar deceptive billing and auto-renewal practices, including high-profile cases against major technology companies. Additionally, numerous class action lawsuits have been filed against companies employing similar auto-renewal practices, resulting in substantial settlements.

6. This lawsuit seeks to hold Houzz accountable for its deceptive subscription practices, to secure relief for consumers who have been harmed by these practices, and to ensure that Houzz complies with the law going forward.

## PARTIES

7. Plaintiff Christine Carr is an individual and a resident of Ponte Vedra Beach, Florida, St. John's County.

8. Defendant Houzz Inc. is a Delaware corporation with its principal place of business in West Hollywood, California. Houzz conducts substantial business in Florida, including advertising, marketing, and selling its subscription services to Florida residents.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class are citizens of states different from Defendant.

10. This action satisfies all jurisdictional requirements under CAFA for the following reasons: a. The proposed class consists of more than 100 members. According to Houzz's own website, Houzz Pro and Houzz Essential software "is trusted by 3 million+" users. This public representation by Defendant establishes that the potential class size far exceeds the minimum 100-member threshold required by CAFA. Based on this representation and other information available to Plaintiffs through pre-filing investigation, the proposed class includes a substantial portion of these 3 million+ users nationwide who purchased or subscribed to Houzz Pro and Houzz Essential software during the proposed class period. b. The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The aggregate damages claimed by Plaintiffs and the proposed class

members exceed $5,000,000 based on: (i) the subscription fees for Houzz Pro and Houzz Essential software, which range from approximately $149 to $249+ per month depending on selection; (ii) multiplied by the substantial portion of Houzz's self-reported 3 million+ users affected by the claims alleged herein; and (iii) Plaintiffs' claims for actual damages, restitution, statutory damages, punitive damages, and attorneys' fees as authorized by applicable law. Even if only a fraction of Houzz's 3 million+ users are included in the class, a conservative calculation of damages based on monthly subscription fees paid during the class period easily exceeds the $5,000,000 CAFA threshold. c. Minimal diversity of citizenship exists between the parties as required by 28 U.S.C. § 1332(d)(2)(A). Plaintiff is a citizen of Florida, while Defendant is incorporated under the laws of Delaware with its principal place of business in West Hollywood, California. d. Upon information and belief, members of the proposed nationwide class include citizens of all 50 states, as Houzz markets and sells access to its Houzz Pro and Houzz Essential platform throughout the United States. This nationwide marketing and sales approach ensures that class members are citizens of multiple states different from Defendant's citizenship (Delaware and California).

11. None of the exceptions to CAFA jurisdiction apply to this action: a. This case does not solely involve a claim concerning a covered security or that relates to the internal affairs or governance of a corporation as defined in 28 U.S.C. § 1332(d)(9). b. This case does not fall under the "local controversy" exception in 28 U.S.C. § 1332(d)(4)(A) because: i. Less than two-thirds of the proposed class members are citizens of Florida. ii. The conduct alleged forms a significant basis for claims against defendants beyond just those who are citizens of Florida; and iii. No other class action asserting the same or similar factual allegations has been filed against any of the defendants in the preceding three years. c. This case does not fall under the "home state" exception

in 28 U.S.C. § 1332(d)(4)(B) because less than two-thirds of the proposed class members and the primary defendants are not citizens of Florida.

12. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 for claims brought under federal laws, including the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8401 et seq.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

## CONSUMER COMPLAINTS ABOUT HOUZZ'S BUSINESS PRACTICES

14. Many consumers report that they have been wrongfully charged by Houzz. Some consumers report that they were subscribed to Houzz Pro and Houzz Essential services without clear disclosure that, at the end of the free trial period, they would be automatically enrolled in and charged for a 12-month subscription that cannot be canceled. Other consumers report that, after attempting to cancel their subscription before renewal, Houzz nevertheless continued to post charges to their credit card, debit card, or third-party payment account. Regardless of the particular circumstances, the common theme is that Houzz charges consumers for automatic renewal subscriptions without proper consent and makes cancellation extremely difficult. This theme runs throughout the multitude of consumer complaints posted on the Better Business Bureau ("BBB") website.

**BBB Complaints**

15. Illustrative customer complaints or reviews posted on the BBB website for Houzz (https://www.bbb.org/us/ca/palo-alto/profile/home-furnishings/houzz-1216-263825/complaints) as of April 30, 2025, which include the following:

> **Problem (April 1, 2025, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16384920).**
>
> "This company auto renewed my subscription and is forcing me to pay for 12 months of service I no longer want. The cost of the service also increased without my knowledge. I was very disappointed with their service the first year I was subscribed to it. When it auto renewed I tried several times to cancel, and Houzz told me I was obligated to pay for one year of service, billed one month at a time."
>
> A true and correct printout of that complaint is attached as **Exhibit "1."**
>
> **Problem (March 12, 2025, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=1).**
>
> " They are a scam and I want a refund for a service that is not useful nor do I use and I keep getting the run around about why they can't cancel and refund it's very shady and is hurting me financially."
>
> A true and correct printout of that complaint is attached as **Exhibit "2."**
>
> **Problem (March 12, 2025, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/customer-reviews?id=1673920).**
>
> "I signed up for a trial period. I went online to cancel and was directed to their chat customer service box. I told the chat agent that I wanted to cancel and they said they would take care of it. Two months later I saw I had been charged the prior two months. I called and explained that I had told the chat agent to cancel it two months ago. They said they would look into it and make sure it was

cancelled but may not be able to refund those two months. I said that was ridiculous but fine as long as I wasn't charge anymore. Another two months later I noticed I was still being charged. I escalated it and they claimed to have no record of the initial cancellation and said they were not able to cancel it when I last called because I was outside of the ****** period." They then threatened to sue if I did not pay $100 month for the rest of the 1 year period - $1200 for something I literally never used once beyond 10 minutes once on the first day of the trial period. At that point I also noticed that - conveniently - they had sent not a single email or call or confirmation or anything else from the moment I signed up for the trial period until the day after their undisclosed ****** ******* ended, when it was apparently too late to do anything, as if they just hope trial subscribers will forget if they lay low until its too late.Then, just now, 12 months later, thinking I'm finally free, I received a call from COLLECTIONS saying that somehow the last two payments did not go through on my card. No prior call or email or notice to me (my card declined the last two for some reason) - just straight to COLLECTIONS. To force me to pay over a thousand dollars for a service I never used on threat of lawsuits and credit destruction. Absolutely CRIMINAL behavior. I hope for nothing but the worst for this company.."

A true and correct printout of that complaint is attached as **Exhibit "3."**

**Problem (February 6, 2025, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16384920&page=2).**

" The company refuses to refund money fraudulently paid for with my CC only a week or two ago. I have disputed the charges on the ** and asked for a new CC from the bank but Houzz Pro will not refund me the money although they can see that I've never used anything on their site and the subscription was just paid for maybe 1 or two weeks ago. I informed them about the situation with my CC but they refused to issue a refund."

A true and correct printout of that complaint is attached as **Exhibit "4."**

**Problem (February 11, 2025, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=2).**

"I wanted to remodel my garage so I downloaded their app and signed on with a subscription and when I try to use their application online, it was not user-friendly and it was not what I wanted so I looked into cancelling with them. in order to cancel, I had to fill out this online form on their site and submit it. There is no receipt to that. They do not email or text you a receipt for them at which is not helpful! I canceled the trial immediately and they're still billing me. They're trying to say I had a 12 month contract for $150 a month. I have no reason to sign up for a 12 month contract so I had no knowledge of agreeing to that! I only needed this for a month but I couldn't operate it. the site wasn't user-friendly when I tried to talk to somebody about the site. I had to wait and wait so that wasn't even manageable. So now they just wanna take me to court and are seeking 1800 from me for a year contract for a site I can't operate"

A true and correct printout of that complaint is attached as **Exhibit "5."**

**Problem (January 27, 2025, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=3).**

"I am submitting this complaint to dispute a HouzzPro account due to misrepresentation and predatory practices regarding the subscription terms. I was under the impression that I was signing up for a month-to-month subscription for their project management software. However, after realizing the service did not meet my needs and fell well short of what was advertised, I attempted to cancel the service slightly over a month after starting on 10/23/24.Unfortunately, I encountered significant challenges. HouzzPros customer support and implementation were subpar, and their responses have been slow and impersonal, with repetitive, generic replies rather than a good-faith effort to resolve my concerns. Rather than honoring my understanding of a month-to-month agreement, they refused to cancel the subscription, leaving me with unwanted charges for December and *******.I am requesting that the agreement be voided and that the fees for December and ******* be prorated and refunded. I believe this to be a reasonable resolution given the misrepresentation of their services and the lack of quality in their product and support.Thank you for your attention to this matter."

A true and correct printout of that complaint is attached as **Exhibit "6."**

**Problem (November 14, 2024, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=6).**

"I did a free trial through houzz but did not find the program useful. I called and canceled the subscription on 10/7/2024, but unfortunately since it was a phone call I do not have record of it. They did not send any emails after 10/6/2024 and I figured it was because the subscription was canceled. On 10/10/2024 they charged $219 to my credit card (which I did not notice). Then they charged me again on 11/11/2024 for $319. I called Houzz on 11/12/2024 to question why I was being charged and the subscription not cancelled. Now they are claiming I did not call to cancel the subscription and am committed to paying $3,828 for the year with no option to cancel this. I did not receive any notice that this subscription started. I attached a photo of my email to show I did not receive formal notice that I would be charged. This is a significant amount of money and it feels fraudulent that I didnt receive written notice that I would be charged and that there is no option to cancel. I would like to be refunded the $538 I was already charged and to cancel the remaining amount they plan to charge me (from the total ($3,828/year subscription)."

A true and correct printout of that complaint is attached as **Exhibit "7."**

**Problem (September 30, 2024, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=8).**

"I am not a business and signed up for a 30 day free trial listed under their pricing tab ****************************************************************************** which specifically listed a 30 day free trial. This was intended for a personal project however, after signing up the site was confusing and hard to navigate therefore I canceled almost immediately after. It wasn't until I saw a charge a couple days later that I checked and had not received a response for the cancellation. I submitted another cancellation request which was then confirmed and requested a refund since it had still not been close to the 30 days. The **** refused to refund me the amount for the trial and stated it was a 7 day trial which again I did not sign up for the link clearly states its 30 day. They are not very responsive and aren't willing to assist with the issue. Don't sign up for this!

Again the link clearly states it's a 30 day free trial and this all happened after 9/4/24. I will continue to fight the charge and warn people about their dishonest practices."

A true and correct printout of that complaint is attached as **Exhibit "8."**

**Problem (September 12, 2024, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=8)**

"I had downloaded the mobile app as a homeowner thinking it would help me design my kitchen. I quickly realized that this was for contractors or professionals. I search on their help platform how to cancel my subscription and was directed to do so through my iPhone / Apple ID / Subscriptions which I did the very same day I down loaded the app. About 3 week later I noticed a charge on my credit card for $217 and some change. I immediately reached out and submitted a claim, it took them 4 days to respond and all they said was my free trial ended and I didn't cancel on time and they will not issue a refund. When I reached back out via chat and connected with a customer service representative explaining this he told me to deal with whoever emailed me and immediately disconnected me from the chat. I then called technical support and was later contacted by a "supervisor" who was rude, calling me a liar and refused to help me or refund me and then hang up on me. I still have no resolution and no one will return my inquiries."

A true and correct printout of that complaint is attached as **Exhibit "9."**

**Problem (August 5, 2024, URL: https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=11).**

"On 06/30/2024, I signed up for a free trial of Houzz Houzz Pro. My trial was set to expire on July ******* , but I was offered and accepted a two-week extension. I have attached screenshots from my browser history as evidence of this offer. Despite this extension, Houzz charged my debit card on 07/30/204 for the initial month of subscription of $140.45.I contacted Houzz customer support on 08/01/2024 and 08/05/2024 to dispute the charge and request a refund. I provided them with my account information and explained the situation with the trial extension. However, my requests were

denied.To add to my frustration, I received an unprofessional and accusatory email from a Houzz employee, ********************************, if you want to name her, on 08/05/2024. This email focused on my lack of communication during the trial period, which is irrelevant to the billing dispute. I have attached a screenshot of this email as evidence of the unprofessional communication.I believe Houzz engaged in unethical billing practices by charging me for a subscription despite a confirmed trial extension. Additionally, the unprofessional communication from their employee further reflects poorly on their customer service.Supporting Documentation:Screenshot(s) of trial extension offer from browser history Screenshot of debit card statement showing the charge Copies of emails or chat transcripts with Houzz customer support Screenshot of the email from ******************************** I request that the Better Business Bureau investigate this matter and help me obtain a full refund from Houzz. I also seek an apology for the unprofessional communication I received.Your Information:Full Name: ****************************** Address: ******************************** Phone Number: ************ Email Address: ************************."

A true and correct printout of that complaint is attached as **Exhibit "10."**

**Problem (July 5, 2024, URL: [https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=12](https://www.bbb.org/us/ca/west-hollywood/profile/home-furnishings/houzz-1216-263825/complaints?id=16389275&page=12)).**

"I signed up for a 30 day free trial of HouzzPro. I followed the process to cancel the free trial before the end, and saw that my account was successfully updated. However, about a week later, I was charged. I did not notice the charge until two months later, by when they charged me a third time. I went to the profile page that said that I had now a 13 month subscription that I could not opt out of!!! I reached out to customer service by phone and through the app, but never heard back! What is the point of a 30 day free trial if you are locked into a subscription? There is a whole petition online for people who were charged this way and were not able to opt out of the subscription signed by 2500 people. This is a deceptive practice, I never agreed to a 13 month subscription, and am demanding an immediate cancellation of the subscription. I am disputing this with my credit card company but if they do not resolve this matter I plan to file a report with the police as I see on here I am not the only one scammed by their shady business practices."

A true and correct printout of that complaint is attached as **Exhibit “11.”**

**Reddit Complaints**

16. Additional consumer complaints about Houzz's renewal and cancellation practices can be found on various online platforms including Reddit, where users share their frustrating experiences. On the r/Construction subreddit, numerous posts highlight the difficulty of canceling Houzz Pro subscriptions once enrolled.

**A Reddit post titled "Has anyone been able to cancel a Houzz Pro subscription?" in the r/Construction community from January 29, 2023 (URL: https://www.reddit.com/r/Construction/comments/10jqtlq/has_anyone_been_able_to_cancel_a_houzz_pro/)**

garnered multiple responses from people who experienced similar difficulties with Houzz's automatic renewal practices and cancellation policies. The complaint-filled thread describes how people were repeatedly charged for subscriptions they tried to cancel, and how Houzz representatives become unresponsive when users attempt to cancel their subscriptions.

A true and correct printout of that complaint is attached as **Exhibit “12.”**

17. These Reddit complaints mirror the experiences of consumers who filed complaints with the BBB, further demonstrating that Houzz's deceptive automatic renewal practices constitute a widespread pattern affecting thousands of consumers across the country.

**SiteJabber Complaints**

18. Additional consumer complaints about Houzz's renewal and cancellation practices can be found on various online platforms including SiteJabber, where users share their frustrating experiences. On the r/Construction subreddit, numerous posts highlight the difficulty of canceling Houzz Pro and Houzz Essential subscriptions once enrolled

**AVOID SUBSCRIBING: SCAM Deceptive Practices and Terrible Customer Service (October 3, 2024, URL: [https://www.sitejabber.com/reviews/houzz.com#193992](https://www.sitejabber.com/reviews/houzz.com#193992)).**

"I had an incredibly disappointing experience with this company. I was charged for a full year of their Pro services despite never using the platform. Immediately after being charged, I reached out to explain the situation and request a refund, only to be denied with no reasonable explanation. Their website makes it almost impossible to unsubscribe, which feels intentionally designed to trap users into paying for something they didn't want. This company seems more interested in profiting off of unsuspecting customers than providing actual value. I find their business practices to be deceptive and unfair. I will never use this service again and strongly advise others to avoid it. Terrible customer service, terrible policies, and a complete lack of accountability. This company is a complete scam and should be avoided at all costs. Their subscription is a money grab, with no way to unsubscribe unless "requesting cancellation" by contacting them"

A true and correct printout of that complaint is attached as **Exhibit "12."**

19. These SiteJabber complaints mirror the experiences of consumers who filed complaints with the BBB and Reddit, further demonstrating that Houzz's deceptive automatic renewal practices constitute a widespread pattern affecting thousands of people across the country.

20. The persistent pattern of unauthorized charges and difficulties with cancellation reflected in these online complaints aptly characterize what happened to Plaintiff

**<u>Plaintiff's Experience</u>**

21. On or about October 21, 2024, Plaintiff visited Houzz's website to explore home design ideas for personal use.

22. During her browsing, Plaintiff was presented with an offer to create a free account to try Houzz, as depicted in **Exhibit "14"** below. The language positioned *below* the prominently displayed "Create Free Account" button uses a light gray font on a white background, rendering it notably inconspicuous to users. The phrases "terms of use" and "privacy policy" lack visual

distinction as they appear in the same light gray color on white background as the surrounding text, with only subtle underlining. Additionally, the ambiguous phrasing "signing up, signing in or continuing" creates uncertainty about whether these terms apply to users accessing the site through Google authentication, as the Plaintiff did.




23. After clicking the "Continue with Google" button, Plaintiff was subsequently taken to a page with an option to select various accounts, including the Starter Plan, the Essential plan or the Pro Plan. Of import, the most prominent text on the option page stated, "Start Free Trial." Moreover, the page does not state that consumers would be automatically enrolled in an annual contract following the free trial. Instead, with respect to the Pro Plan, it reads "$0/month for the 30 day free trial, then $199/mo," as represented in **Exhibit "15"** below:



24. After clicking the “Start Free Trial” button on the preceding page, Plaintiff was directed to a subsequent page prominently displaying the headline “Try Pro free” in large, bold font at the top, as represented in **Exhibit “16” below.** Believing she was signing up for a no-strings-attached 30-day free trial, Plaintiff proceeded to enter her personal and credit card information. At no point was she required to check a box or click a button affirming that she had read or agreed to Houzz’s terms and conditions. Critically, the existence of a 12-month commitment was not clearly or conspicuously disclosed. Instead, this material term was buried in small, light grey font on white background at the bottom right corner of the screen—text that was not only difficult to see, but appeared to have been intentionally styled as the faintest text on the page to discourage user attention.




¶

25. Thereafter, Plaintiff was taken to a subsequent page, which again prominently featured the headline "Try Pro free for 30 Days" in large, bold font at the top, as represented in **Exhibit "17"** below. At the bottom of that page, Houzz strategically placed a high-contrast black button with white text reading "Start 30-Day Free Trial." This shows a complete webpage with all

relevant information visible within the initial viewport. The only subtle indicator that additional content may exist below was a nearly imperceptible scroll bar on the right-hand side of the page.




26. Indeed, as shown in **Exhibit "18"** below, Plaintiff would have had to affirmatively scroll down *below* the prominently displayed "Start Free Trial" button, which Plaintiff never did, before the page would show a small font nine-line congested paragraph purporting to indicate that clicking the prominently displayed button constituted an agreement to Houzz's terms and conditions, privacy policy, and non-cancellation policy. Notably, the page did not require Plaintiff to check a box or click a button specifically acknowledging that she had read and/or agreed to

Houzz's terms and conditions or privacy policy, or that she had even seen scrolled down to see the *nine-line* congested paragraph containing same (she did not).




27. A video representing what was displayed/observed by Plaintiff on Houzz's webpage when she navigated to the above page and signed up for a Houzz account is annexed hereto as **Exhibit "19."** As clearly documented in this video evidence, at no point during the entire checkout process were Houzz's terms and conditions or privacy policy ever visible to Plaintiff. The video definitively captures what presents itself as a complete, self-contained webpage with all necessary information displayed within the initial viewport.

28. Further demonstrating Houzz's deliberate obfuscation tactics, the only colorful text on the above page that visually stood out as a hyperlink is blue text indicating promotional savings, which deceptively wasn't even a functioning hyperlink despite its appearance. This misleadingly

draws the user's attention to potential discounts rather than binding contractual terms. Meanwhile, the alleged hyperlinks to their terms and conditions and privacy policy appear visually identical to non-clickable text elements on the same page (e.g. their customer service number located directly below the congested paragraph), providing no visual cues to indicate their interactive nature. This strategic design choice prevented users from readily accessing, reviewing, or even knowing the existence of the contractual terms before unknowingly committing to them.

29. After completing the sign-up process, Plaintiff received a confirmation email with the subject line "Houzz Pro Free Trial Confirmation." This email stated: "For the next 30 days, you'll have unlimited access to everything our Houzz Pro, Pro plan offers. Don't worry—your credit card won't be charged until after your trial ends on November 20, 2024."

30. The confirmation email made no mention of a 12-month commitment or inability to cancel, reinforcing Plaintiff's reasonable understanding that she was signing up for a free trial that she could cancel at any time. It likewise did not contain nor made any mention of Houzz' terms and conditions or its privacy policy. A true and correct copy of this email is attached hereto as **Exhibit "20."**

**From:** Houzz Pro <donotreply@houzz.com>
**Date:** October 21, 2024 at 12:49:07 PM EDT
**To:** [redacted]
**Subject: Houzz Pro Free Trial Confirmation**

**Your Free Trial Starts Now, Christine!**

For the next 30 days, you'll have unlimited access to everything our Houzz Pro, Pro plan offers. Don't worry—your credit card won't be charged until after your trial ends on November 20, 2024.

Start using Houzz Pro now!

Need a hand with your new tools? Start earning your Houzz Pro Certification to fast-track your training.

For more details about your plan, please review the attachment. To get help, see how to reach our support team here. To modify your subscription, click here.

**The Houzz Team**

Houzz Inc. 8605 Santa Monica Blvd., #90918, West Hollywood, California 90069-4109

© 2024 Houzz Inc. | Privacy Policy

31. When Plaintiff subsequently attempted to cancel her subscription, Houzz refused, claiming that she had agreed to a 12-month commitment that could not be canceled early.

32. Houzz has charged Plaintiff approximately $1,000; and has advised that it will continue to charge Plaintiff based on this deceptive agreement.

## Applicable Legal Framework

33. Under Florida's Automatic Renewal Law, Fla. Stat. § 501.165, a seller must: a. Present the terms of an automatic renewal offer "clearly and conspicuously" before the subscription is fulfilled; b. Obtain the consumer's affirmative consent to the agreement containing the automatic renewal terms before charging the consumer; and c. Provide an acknowledgment that includes the

automatic renewal terms, cancellation policy, and information on how to cancel in a manner capable of being retained by the consumer.

34. The Federal Trade Commission enforces the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8401 et seq., which requires that for online negative option features: a. The material terms of the transaction must be disclosed before obtaining the consumer's billing information; b. The consumer must provide express informed consent before being charged; and c. There must be a simple mechanism for consumers to stop recurring charges.

35. Federal authorities, including the FTC, have recently pursued enforcement actions against companies with deceptive auto-renewal practices. For example:

a) In April 2025, the FTC filed a lawsuit against Uber Technologies (Case No. 3:25-cv-3477) in the Northern District of California alleging nearly identical violations to those at issue in this case. The FTC's complaint against Uber alleges that the company falsely claimed consumers could "cancel anytime," failed to provide simple cancellation mechanisms, and incorporated deliberately complex cancellation processes that required consumers to navigate up to 23 screens and take as many as 32 actions to cancel a subscription.

b) In June 2023, the FTC charged Amazon.com, Inc. (Case No. 2:23-cv-00932-JHC) in the U.S. District Court for the Western District of Washington with using deceptive practices to enroll consumers into its Prime program without consent and making it difficult to cancel subscriptions. The complaint specifically called out Amazon's use of "dark

patterns" to mislead consumers – similar to the techniques alleged against Houzz in this action.

c) Most recently, in March 2025, the FTC reached a $17 million settlement with Cleo AI, Inc. (Case No. 1:25-cv-02594) in the U.S. District Court for the Southern District of New York after alleging that the company misled consumers about its services and enrolled them in auto-renewing subscriptions without clear consent – practices mirroring those of Houzz's subscription service.

36. In addition to regulatory enforcement, numerous private class action lawsuits have been successfully pursued against companies employing similar auto-renewal and subscription practices. Recent examples include:

a) *Winston v. Peacock TV LLC* (Case No. 1:23-cv-08191-ALC), filed in the U.S. District Court for the Southern District of New York in September 2023, which alleged that Peacock TV automatically renewed subscriptions and charged customers without providing the disclosures and authorizations required by California law. The case resulted in a $3.74 million settlement.

b) *Nelson et al. v. System1, Inc., et al.* (Case No. 37-2023-00045878-CU-BT-CTL), filed in the Superior Court of California, County of San Diego in October 2023, which alleged that System1 and its affiliates enrolled consumers in automatic renewal subscriptions for software products without proper disclosures, violating California's Automatic Renewal Law. A $2.5 million settlement was reached.

c) *Leventhal et al. v. Streamlabs LLC* (Case No. 3:22-cv-01330-LB), filed in the U.S. District Court for the Northern District of California in July 2022, in which plaintiffs alleged that Streamlabs enrolled users into its Pro subscription without clear consent and made cancellation difficult, violating consumer protection laws. The case resulted in a $4.4 million settlement.

d) *Peterson v. NordVPN S.A. et al*. (Case No. 1:24-cv-03218), filed in the U.S. District Court for the District of Colorado in November 2024, which alleges that NordVPN used deceptive tactics, such as hiding renewal terms in fine print and making cancellation options difficult to find, leading to unauthorized charges – practices nearly identical to those alleged against Houzz in this action.

e) *Nichols et al. v. Noom Inc., et al*. (Case No. 1:20-cv-03677-KHP), filed in the U.S. District Court for the Southern District of New York in May 2020, which claimed that Noom used deceptive practices to enroll users into auto-renewing subscriptions and made it difficult to cancel, violating various state consumer protection laws. This case resulted in a substantial $62 million settlement, demonstrating the significant liability companies face for these deceptive practices.

**<u>Houzz's Deceptive Practices</u>**

37. Houzz deliberately designs its sign-up process to emphasize the "free trial" aspect while obscuring the material terms regarding the 12-month commitment and inability to cancel.

38. Houzz's sign-up process violates the "clear and conspicuous" disclosure requirement of Florida's Automatic Renewal Law in multiple ways: a. Prominence: The disclosure lacks appropriate size, is in light grey text that lacks contrast against the background, and is difficult to notice. b. Presentation: The critical terms are buried within a dense paragraph of text, discouraging users from reading it. c. Placement: The disclosure is relegated to the bottom right of the signup process, far from where consumers are focusing their attention. d. Proximity: The disclosure is distant from the credit card and billing information section, separating the limiting terms from the promotional elements.

39. Houzz fails to provide an acknowledgment that includes the automatic renewal terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, as required by Florida's Automatic Renewal Law.

40. Houzz further attempts to evade consumer protection laws by falsely characterizing consumers who select "Interior Designer" during the sign-up process as businesses rather than consumers, despite having no basis for doing so. Indeed, same is shown in the email below, which is marked as **Exhibit "21."**

April 29, 2025

**Regarding: Houzz Account for Christine Carr**

Dear Mr. Carr,

We hope this message finds you well.

We wanted to clarify some potential confusion regarding Ms. Carr's account type and the associated terms and conditions. During the account sign-up process, Ms. Carr selected "Interior Designer" as her user type, which typically corresponds to a business account rather than one intended for homeowners using our platform. This is why we had written that consumer laws are not applicable.

That said, assuming Ms. Carr is a consumer under Florida law, Houzz has complied fully with all applicable consumer protection requirements. Our software is exclusively sold on an annual basis - which is clearly and conspicuously communicated on our website, during the check out process, in our terms and conditions, and in the pro service agreement, which was delivered to Ms. Carr.

We take care to ensure that all key terms, including pricing and renewal policies are presented in a compliant manner. The relevant terms are not hidden or buried. In fact, they are prominently displayed *directly* below the call-to-action button, using underlining, bold text, and contrasting font. This approach is fully compliant and browserwarp isn't required.

We are truly sorry to hear that Ms. Carr hasn't enjoyed her experience using our software. Her plan ends on November 20, 2025 at which time she will no longer be charged.

Thank you,
Houzz Legal Operations

41. Defendant's anticipated assertion that the Houzz Pro and Essential user base consists primarily of "business account[s]," not subject to consumer protection laws is both factually unsupported and legally irrelevant. Houzz does not require users to submit any documentation or verification of business status during the sign-up process (e.g. it does not request nor require corporate formation records, tax identification numbers, or evidence of professional licensure). Rather, consumers can subscribe using personal email addresses, individual credit cards, and without any acknowledgment that they are acting in a business capacity. Here, Plaintiff and similarly situated consumers subscribed to Houzz Pro and Essential for a variety of purposes, including exploratory or hybrid personal use, and were never asked to confirm or disclose business use. As such, they are entitled to the protections of federal and state consumer protection laws, including ROSCA and Florida's Deceptive and Unfair Trade Practices Act.

42. Moreover, Houzz acknowledges on its own website that its platform serves homeowners seeking inspiration for personal use. According to Houzz's "About Us" page: "When founders Adi Tatarko and Alon Cohen found themselves in the midst of a frustrating renovation experience for their own home, they knew there had to be a better way. So they built Houzz. What started as a side project has now grown to a community of more than 70 million homeowners and home design enthusiasts, and over 3 million building, remodeling and design professionals around the world. As the leading platform for home remodeling and design, Houzz provides the only all-in-one project management and design solution for industry professionals and tools for homeowners to update their homes from start to finish. Our mission has been the same since day one: to provide the best experience for home renovation and design, connecting homeowners and home professionals with the best tools, resources and vendors. There's no place like Houzz. For Homeowners You can find everything you need for your renovation or decorating project on

Houzz: Get inspired, find home professionals and discover products to complete your projects." (https://www.houzz.com/aboutUs).

43. This admission directly contradicts Houzz's anticipated defense that its services are exclusively marketed to businesses rather than consumers. By Houzz's own description, the platform was created for and continues to serve individual homeowners seeking home design inspiration and renovation assistance for personal use.

44. Houzz also mischaracterizes its service as "software" when in fact nothing is downloaded onto consumers' computers—it is merely access to a website (*See* **Exhibit "21,"** supra).

45. Houzz falsely claims its service is "exclusively sold on an annual basis" while simultaneously promoting a "free trial," creating a contradictory and misleading representation of its offering. (*See* **Exhibit "21,"** supra).

46. Houzz imposes an additional deceptive requirement that even after consumers complete their initial 12-month commitment, they must submit a cancellation request at least 30 days before the contract's renewal date or they are automatically enrolled in another full 12-month term.

47. This 30-day advance cancellation requirement for preventing automatic renewal is buried in the terms and conditions and not clearly and conspicuously disclosed during sign-up, nor is it prominently mentioned in any follow-up communications throughout the initial subscription period.

48. When consumers attempt to cancel their subscriptions near the end of the initial 12-month term but after the 30-day window has passed, Houzz informs them that they are obligated to pay for an entire additional year of service despite their explicit desire to cancel.

49. Houzz does not provide adequate reminders or notifications about the upcoming auto-renewal during this critical 30-day window, intentionally allowing consumers to miss the cancellation deadline and trapping them in another full year of unwanted service. Indeed, as shown below, Houzz asserts that it may unilaterally withhold the statutorily required advance notice of renewal from users whom it unilaterally deems to be professionals or businesses. However, Houzz provides no objective criteria for this classification, nor does it verify business or professional status at the time of enrollment. This arbitrary approach not only violates the plain language and intent of federal and state automatic renewal laws, which are designed to protect consumers, but also underscores the deceptive nature of Houzz's subscription practices. A copy of Houzz's assertion is shown below in **Exhibit "22."**

RENEW IN YOUR ACCOUNT SETTINGS. IF YOU USE THE PRO PLATFORM AS A PROFESSIONAL AND/OR A BUSINESS, YOU HEREBY ACKNOWLEDGE THAT YOU MAY NOT RECEIVE NOTICE OF AUTOMATIC RENEWAL AND EXPRESSLY WAIVE THE APPLICATION OF CONSUMER PROTECTION LAWS THAT REQUIRE SUCH NOTICE.

50. Additionally, Defendant's anticipated defense that its services are marketed to businesses rather than consumers is likesiwe legally insufficient, as several states have explicitly extended consumer protections to sole proprietors and small businesses in the context of automatic renewal laws. Virginia's recently amended automatic renewal law (effective July 1, 2024) expressly treats "small businesses" as consumers entitled to the same protections. Wisconsin's Automatic Renewal Law (Wis. Stat. § 134.49) specifically regulates business-to-business contracts requiring clear up-front disclosure of renewal terms. Furthermore, because sole proprietorships lack legal separation from their owners, there is no distinction between the business and individual

for liability purposes or legal protections, meaning consumer protection laws apply by default. The Federal Trade Commission has previously pursued enforcement actions against companies for trapping small businesses with hidden renewal terms, demonstrating that even business-oriented services must comply with automatic renewal regulations. Houzz's practice of unilaterally characterizing users as "businesses" without verification of business status is therefore an attempt to circumvent consumer protection laws.

51. Evidence from consumer reviews, complaints to the Better Business Bureau, and numerous other public sources demonstrates that these deceptive practices are not isolated to Plaintiff's experience but represent a widespread pattern affecting thousands of consumers.

52. Numerous consumers have reported similar experiences with Houzz, including: a. Automatic renewals without proper notification; b. Inability to cancel subscriptions during or after free trial periods; c. Being told they must complete the full 12-month term regardless of satisfaction with the service; d. Having cancellation requests ignored or denied; e. Being sent to collections despite receiving confirmation of cancellation; and f. Experiencing significant price increases during automatic renewals without clear prior disclosure.

53. Houzz's own website acknowledges that it requires users to complete the remainder of their 12-month contract even when requesting cancellation, stating: "this will not be an immediate cancellation — you will still need to complete the remainder of the 12-month contract."

54. Houzz's Terms of Service contains a "Recurring Billing" provision that states subscriptions "WILL RENEW AUTOMATICALLY WITHOUT ADDITIONAL NOTICE FOR SUCCESSIVE 12-MONTH TERMS" unless users provide notice at least 30 days before expiration, a requirement that is not prominently disclosed during sign-up.

55. Houzz's unconscionable arbitration provision cannot be enforced against Plaintiff for multiple dispositive reasons:

56. First, no valid contract formation occurred. Houzz employed a deliberately deceptive "free trial" interface that failed to provide reasonable notice of binding contractual terms. As shown in **Exhibit "14,"** the language positioned below the prominently displayed "Create Free Account" button utilized a light gray font on a white background, rendering it notably inconspicuous to users. The phrases directly below the action button, "terms of use" and "privacy policy" lack visual distinction as they appear in the same light gray color on white background as the surrounding text, with only subtle underlining. Additionally, the ambiguous phrasing "signing up, signing in or continuing" creates uncertainty about whether these terms apply to users accessing the site through Google authentication, as the Plaintiff did.

57. Additionally, the first photograph and video of the signup process definitively shows what appeared to be a complete webpage with all relevant information contained within the initial viewport, with no clear indication that crucial contractual terms existed below. ***See* Exhibits "17" and "19."** The only indicator that additional content existed below the prominently placed "Start 30-Day Free Trial" button was a minuscule scroll bar.

58. Second, Houzz's interface constitutes textbook "hiding the ball" tactics that courts have repeatedly rejected. Unlike legitimate contract formation processes, Houzz deliberately avoided industry-standard consent mechanisms, no checkbox acknowledging agreement to terms, no confirmation pop-up, and no "I agree" button. Instead, Houzz buried material contractual terms in an intentionally inconspicuous, dense nine-line paragraph using visually suppressed text that falls well below the fold of what appears to be a complete webpage. ***See* Exhibits "17," "18" and "19."**

59. Third, Houzz created misleading visual hierarchies that actively diverted attention from binding terms. The interface strategically deployed attention-grabbing blue text highlighting discounts which deceptively wasn't even functional as a hyperlink, while essential contract provisions were rendered in plain, unremarkable text visually indistinguishable from other non-clickable elements (e.g. Houzz’s contact number). ***See* Exhibits “17,” “18” and “19.”**

60. Fourth, courts consistently reject "browsewrap" agreements where terms are not prominently displayed. Here, Houzz goes further by employing actively deceptive design patterns. The alleged hyperlinks to Terms and Conditions were deliberately designed to appear identical to non-clickable text, providing no visual differentiation to indicate their interactive nature, a clear departure from established web design conventions for hyperlinks. ***See* Exhibits “17,” “18” and “19.”**

61. Fifth, the totality of circumstances, from misleading headings ("Try Pro free for 30 Days") to strategically placed action buttons to buried non-cancellation provisions, establishes that Houzz intentionally engineered this interface to create an illusory impression of a risk-free trial while concealing the existence of a binding annual commitment that cannot be canceled.

62. The Better Business Bureau has received numerous complaints about Houzz's auto-renewal and cancellation practices, with consumers reporting similar experiences to Plaintiff's, indicating a pattern of deceptive practices. Complaints regarding same have also been launched on numerous other platforms.

## CLASS ALLEGATIONS

63. Plaintiff brings this action, individually and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following Classes and Subclasses:

64. Nationwide Class: All persons in the United States who, within the applicable statute of limitations period, on or before October 21, 2024, who were enrolled in an automatically renewing subscription for Houzz services under a Houzz Pro or Essential account.

65. Personal Account Subclass: All members of the Nationwide Class who signed up for a Houzz Pro or Essential account on or before October 21, 2024, using their personal name, personal credit card, and personal email address (not a business email domain).

66. Non-Advertising Subclass: All members of the Nationwide Class who signed up for a Houzz Pro or Essential account on or before October 21, 2024, who never sought to receive leads from consumers or otherwise ever advertised on Houzz's platform.

67. Small Business Subclass: All members of the Nationwide Class who signed up for a Houzz Pro or Essential account on or before October 21, 2024, who are small businesses or sole proprietors as defined by the U.S. Small Business Administration (SBA).

68. Florida Subclass: All persons in Florida who signed up for a Houzz Pro or Essential account on or before October 21, 2024, who were enrolled in an automatically renewing subscription for Houzz services.

69. Florida Personal Account Subclass: All members of the Florida Subclass who signed up for a Houzz Pro or Essential account on or before October 21, 2024, using their personal name, personal credit card, and personal email address (not a business email domain).

70. Florida Non-Advertising Subclass: All members of the Florida Subclass who signed up for a Houzz Pro or Essential account on or before October 21, 2024, who never sought to receive leads from consumers or otherwise ever advertised on Houzz's platform.

71. Wisconsin Small Business Subclass: All members of the Nationwide Class who signed up for a Houzz Pro or Essential account on or before October 21, 2024, who are small businesses operating in Wisconsin pursuant to Wis. Stat. § 134.49.

72. Virginia Small Business Subclass: All members of the Nationwide Class who signed up for a Houzz Pro or Essential account on or before October 21, 2024, who are small businesses operating in Virginia as defined by Chapter 17.8 of Title 59.1 of the Code of Virginia, specifically §§ 59.1-207.45 and 59.1-207.46, which extends consumer protection to small businesses in the context of automatic renewal laws.

73. The creation of specific subclasses for small businesses, sole proprietors, and individuals who signed up using personal information is appropriate because:

a) Small businesses and sole proprietors are entitled to consumer protections under various state laws, including Wisconsin's Automatic Renewal Law (Wis. Stat. § 134.49) and Virginia's recently amended Automatic Renewal Remedies Act (Va. Code Ann. § 59.1-207.45 et seq.).

b) The FTC has previously pursued enforcement actions under ROSCA and Section 5 of the FTC Act to protect small businesses from deceptive auto-renewal practices, recognizing that small businesses often lack the resources and bargaining power of larger enterprises.

c) Users who signed up with personal information rather than business information have an even stronger claim to consumer protection laws, as Houzz had clear notice that these users were individuals rather than businesses.

d) Users who never sought to advertise or receive leads through Houzz's platform were using the service primarily for personal design purposes rather than commercial purposes, further entitling them to consumer protections regardless of how Houzz may have classified them.

e) These distinctions are relevant to class certification as they address potential defenses by Houzz that certain users are not entitled to consumer protections because they are "businesses," when in fact they are either: (1) entitled to such protections under applicable state and/or federal laws; (2) used personal rather than business information when signing up; or (3) used the platform for personal rather than commercial purposes.

74. These subclasses satisfy the requirements of Rule 23 because:

a) The subclasses are sufficiently numerous, with thousands of users in each category based on Houzz's own representations about its user base.

b) Common questions of law and fact apply to each subclass, including whether Houzz's practices comply with the specific laws applicable to each subclass.

c) Plaintiff's claims are typical of the members of these subclasses, as she signed up using personal information and did not seek to advertise on the platform.

d) Plaintiff will fairly and adequately protect the interests of these subclasses, and there are no conflicts between the subclasses as all seek the same remedies based on the same underlying conduct by Houzz.

75. Excluded from the Classes are Defendant, its officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns, as well as any judicial officers presiding over this matter and members of their immediate families and judicial staff.

76. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

77. Numerosity: The members of the proposed Classes are so numerous that individual joinder of all members is impracticable. While the exact number of Class members is currently unknown to Plaintiff, it is believed to number in the thousands.

78. Commonality: Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual Class members. These common questions include: a. Whether Houzz's automatic renewal and/or continuous service offer terms were presented clearly and conspicuously and in compliance with Florida law; b. Whether Houzz obtained consumers' affirmative consent to the automatic renewal terms; c. Whether Houzz provided an acknowledgment that included the automatic renewal or continuous service terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer; d. Whether Houzz's practices violate FDUTPA; e. Whether Houzz breached its contracts with Class members; f. Whether Houzz has been unjustly enriched; and g. Whether Plaintiff and Class members are entitled to damages, restitution, injunctive relief, or other relief, and the measure of such relief.

79. Typicality: Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all Class members were similarly injured through Defendant's uniform misconduct described herein.

80. Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

81. Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct.

## FIRST CAUSE OF ACTION

## Violation of the Restore Online Shoppers' Confidence Act, 15 U.S.C. § 8401 et seq.

82. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

83. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and all Subclasses.

84. ROSCA prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as defined by the FTC's Telemarketing Sales Rule, 16 C.F.R. § 310.2(w), unless the seller: (1) provides text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (2) obtains the consumer's express informed consent before charging the consumer; and (3) provides simple mechanisms to stop recurring charges. 15 U.S.C. § 8403.

85. Under ROSCA, the term "negative option feature" means "an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w).

86. Houzz has sold and continues to sell services on the Internet through a negative option feature as defined by 16 C.F.R. § 310.2(w).

87. Houzz has violated and continues to violate ROSCA by: a. Failing to clearly and conspicuously disclose all material terms of the transaction before obtaining consumers' billing information, including the fact that consumers would be automatically enrolled in a 12-month commitment that cannot be canceled; b. Failing to obtain consumers' express informed consent before charging their payment methods; c. Failing to clearly and conspicuously disclose that consumers must cancel at least 30 days before the end of the initial 12-month term to avoid being charged for another full year; d. Failing to provide adequate notice or reminders about the upcoming auto-renewal during the 30-day cancellation window; and e. Failing to provide simple mechanisms for consumers to stop the recurring charges, including by refusing to allow cancellation during the trial period, requiring consumers to complete the full 12-month term

regardless of their desire to cancel, and automatically enrolling consumers in another full year term if they miss the 30-day advance cancellation window.

88. These violations mirror those alleged by the FTC in recent enforcement actions, including:

a) The April 2025 complaint against Uber (Case No. 3:25-cv-3477), in which the FTC charged Uber with violating ROSCA by failing to provide simple mechanisms for cancellation, requiring consumers to navigate a maze of screens and execute numerous actions just to cancel a subscription;

b) The June 2023 complaint against Amazon.com, Inc. (Case No. 2:23-cv-00932-JHC), in which the FTC alleged Amazon violated ROSCA through the use of manipulative, coercive, or deceptive user interface designs known as "dark patterns" to trick consumers into enrolling in automatically renewing Prime subscriptions; and

c) The March 2025 settlement with Cleo AI, Inc. (Case No. 1:25-cv-02594), which resulted in a $17 million payment and requirements for the company to implement clear disclosures and simple cancellation mechanisms to address ROSCA violations similar to those alleged in this complaint.

89. Similarly, multiple class actions against companies employing similar auto-renewal practices have resulted in significant settlements, including:

a) The $3.74 million settlement in *Winston v. Peacock TV LLC* (Case No. 1:23-cv-08191-ALC);

b) The $2.5 million settlement in *Nelson et al. v. System1, Inc., et al.* (Case No. 37-2023-00045878-CU-BT-CTL);

c) The $4.4 million settlement in *Leventhal et al. v. Streamlabs LLC* (Case No. 3:22-cv-01330-LB); and

d) The $62 million settlement in *Nichols et al. v. Noom Inc., et al*. (Case No. 1:20-cv-03677-KHP).

90. The magnitude of these settlements demonstrates both the severity of the violations and the significant liability that Houzz faces for its similar conduct described herein.

91. Pursuant to 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under the FTC Act, 15 U.S.C. § 57a, and constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

92. As a direct and proximate result of these violations, Plaintiff and Class members have suffered injury in fact and lost money or property. Plaintiff and Class members have been damaged in the amount they paid to Houzz for subscription services.

93. Plaintiff and the other members of the Nationwide Class and Consumer Subclass seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees and costs, and injunctive relief.

**SECOND CAUSE OF ACTION**

**Violation of Florida's Automatic Renewal Law, Fla. Stat. § 501.165**

94. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

95. Plaintiff brings this claim individually and on behalf of the members of the Florida Subclass, Florida Personal Account Subclass, and Florida Non-Advertising Subclass against Defendant.

96. Florida's Automatic Renewal Law, Fla. Stat. § 501.165, governs "any service contract that has an automatic renewal provision."

97. Houzz offers and sells "services" as defined by Florida's Automatic Renewal Law.

98. Plaintiff and Class members are "consumers" as defined by Florida's Automatic Renewal Law.

99. Houzz has violated, and continues to violate, Florida's Automatic Renewal Law by failing to present its automatic renewal and/or continuous service terms in a clear and conspicuous manner before the subscription is fulfilled and in visual proximity to the request for consent to the offer.

100. Houzz has violated, and continues to violate, Florida's Automatic Renewal Law by charging Plaintiff's and Class members' credit or debit cards, or a third-party account, without first obtaining their affirmative consent to the agreement containing the automatic renewal terms and/or continuous service offer terms.

101. Houzz has violated, and continues to violate, Florida's Automatic Renewal Law by failing to provide an acknowledgment that includes the automatic renewal and/or continuous service terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.

102. Houzz has violated, and continues to violate, Florida's Automatic Renewal Law by failing to provide the consumer with written or electronic notification of the automatic renewal provision between 30 and 60 days before the cancellation deadline pursuant to the automatic renewal provision, as required by Fla. Stat. § 501.165(b).

103. Houzz has violated, and continues to violate, Florida's Automatic Renewal Law by failing to disclose clearly and conspicuously in such notification: (1) that unless the consumer cancels the contract, it will automatically renew; and (2) the methods by which the consumer may obtain details of the automatic renewal provision and cancellation procedure, as required by Fla. Stat. § 501.165(b)(1-2).

104. Houzz has violated, and continues to violate, Florida's Automatic Renewal Law by failing to allow consumers to "cancel the service contract in the same manner, and by the same means, as the consumer manifested his or her acceptance of the service contract" as required by Fla. Stat. § 501.165(d), which was added in a 2022 amendment to strengthen consumer protections.

105. As a direct and proximate result of Houzz's violations of Florida's Automatic Renewal Law, Plaintiff and Class members have suffered injury in fact and lost money or property. Plaintiff and the Class members have been damaged in the amount they paid to Houzz for subscription services.

106. Pursuant to Fla. Stat. § 501.165(f), all goods, wares, merchandise, or products sent to a consumer under a continuous service agreement or automatic renewal of a service contract are deemed to be an unconditional gift to the consumer, if Houzz fails to comply with the requirements of the statute.

107. Pursuant to Fla. Stat. § 501.165(f), a violation of the statute renders the automatic renewal provision void and unenforceable.

**THIRD CAUSE OF ACTION**

**Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq.**

108. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

109. Plaintiff brings this claim individually and on behalf of the members of the Florida Subclass, Florida Personal Account Subclass, and Florida Non-Advertising Subclass against Defendant.

110. FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

111. Plaintiff and Class members are "consumers" as defined by Fla. Stat. § 501.203(7).

112. Houzz has engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

113. Houzz has violated FDUTPA by engaging in unfair and deceptive acts and practices, including but not limited to: a. Failing to present automatic renewal and/or continuous service terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled; b. Charging consumers' payment methods without first obtaining consumers' affirmative

consent to the agreement containing the automatic renewal terms and/or continuous service offer terms; c. Failing to provide an acknowledgment that includes the automatic renewal and/or continuous service terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer; d. Misrepresenting the nature of the subscription as a "free trial" without adequately disclosing the 12-month commitment and inability to cancel; e. Deceptively designing the sign-up process to emphasize the "free trial" while obscuring material terms in light grey, small font text at the bottom right of the page; f. Failing to clearly and conspicuously disclose that consumers must cancel at least 30 days prior to the end of their 12-month term to avoid being automatically enrolled in another full year of service; g. Failing to provide adequate notice or reminders to consumers about the upcoming renewal and 30-day cancellation deadline; h. Automatically enrolling consumers in another full 12-month commitment when they miss the 30-day advance cancellation window, despite their explicit desire to cancel; i. Falsely characterizing consumers as businesses in an attempt to evade consumer protection laws; j. Mischaracterizing its service as "software" when it is merely access to a website; and k. Falsely claiming its service is "exclusively sold on an annual basis" while simultaneously promoting a "free trial."

114. Houzz's unfair and deceptive acts and practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and Class members.

115. As a direct and proximate result of Houzz's violations of FDUTPA, Plaintiff and Class members have suffered actual damages. Specifically, Plaintiff's actual damages are currently in excess of $1,000, and continuing.

116. Pursuant to Fla. Stat. § 501.211(2), Plaintiff and Class members are entitled to recover actual damages, plus attorneys' fees and court costs as provided in Fla. Stat. § 501.2105.

117. Pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Class members are entitled to obtain declaratory and injunctive relief to stop Houzz's unfair and deceptive conduct.

## FOURTH CAUSE OF ACTION

### Violation of State Consumer Protection Laws

118. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

119. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class, Personal Account Subclass, Non-Advertising Subclass, Florida Subclass, Florida Personal Account Subclass, and Florida Non-Advertising Subclass against Defendant.

120. Houzz has engaged in unfair, deceptive, and unconscionable practices in connection with its automatic renewal subscription service in violation of state and federal consumer protection laws in each of the fifty states and the District of Columbia, including but not limited to: a. California's Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600-17606; b. New York's General Obligations Law § 5-903; c. Illinois Automatic Contract Renewal Act, 815 ILCS 601/1 et seq.; d. Colorado Consumer Protection Act, C.R.S. § 6-1-101 et seq.; e. Washington's Consumer Protection Act, RCW 19.86.010 et seq.; f. Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq.; g. Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8401 et seq.; h. Florida's Automatic Renewal Law, Fla. Stat. § 501.165; i. the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq.; j. Arkansas Home Service Contract Act, Ark. Code Ann. § 4-114-101 et seq.; k. Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq.; l. Connecticut Automatic Renewal Provisions in Consumer Contracts law, Conn. Gen. Stat. Ann. § 42-126b; m. Delaware Automatic Renewal Provisions law, Del. Code Ann. tit. 6, § 2505A; n. District of Columbia

Automatic Renewal Provisions law, D.C. Code § 28A-203; o. Georgia Online Automatic Renewal Transparency Act, Ga. Code Ann. § 13-12-5; p. Hawaii Automatic Renewal Clauses law, Haw. Rev. Stat. § 481-9.5; q. Idaho Automatic Renewal Contracts Act, Idaho Code § 48-603G; r. Iowa Physical Exercise Clubs law, Iowa Code § 552.1 et seq.; s. Louisiana Automatic Renewal of Consumer Contracts law, La. Rev. Stat. Ann. § 9:2716; t. Maine Automatic Renewal or Extension of Contracts law, Me. Rev. Stat. tit. 10, § 1210-C; u. Maryland Consumer Protection Act (health club contracts), Md. Code Ann., Com. Law § 14-12B-06; v. Minnesota Automatic Renewal Law, Minn. Stat. § 325G.298; w. New Mexico Service Contract Automatic Renewal law, N.M. Stat. Ann. § 57-12-15; x. New York Automatic Renewal Law, N.Y. Gen. Bus. Law § 527-a; y. North Carolina Automatic Renewal of Service Contracts law, N.C. Gen. Stat. § 75-41; z. North Dakota Automatic Renewal of Service Contracts law, N.D. Cent. Code § 51-37-01 et seq.; aa. Oregon Automatic Renewal of Service Contracts law, Or. Rev. Stat. § 646A.295; bb. South Carolina Automatic Renewal Law, S.C. Code Ann. § 39-5-45; cc. Vermont Automatic Renewal Provisions in Consumer Contracts law, 9 Vt. Stat. Ann. § 2454a; dd. Virginia Automatic Renewal Remedies Act, Va. Code Ann. § 59.1-207.45 et seq.; ee. Wisconsin Automatic Renewal of Business Contracts law, Wis. Stat. § 134.49; and ff. Similar state consumer protection and automatic renewal laws in other states.

121. Houzz's unfair and deceptive practices include but are not limited to: a. Failing to clearly and conspicuously disclose the material terms of its automatic renewal program; b. Failing to obtain consumers' affirmative consent to the automatic renewal terms; c. Failing to provide consumers with an acknowledgment that includes the automatic renewal terms, cancellation policy, and information on how to cancel; d. Failing to clearly and conspicuously disclose that consumers must cancel at least 30 days before the end of their term to avoid being automatically

enrolled in another full year of service; e. Failing to provide adequate notice or reminders about the upcoming renewal and the 30-day advance cancellation requirement; f. Automatically enrolling consumers in another full 12-month commitment when they attempt to cancel after the 30-day window but before the end of their term; g. Failing to provide a simple mechanism for consumers to cancel their subscriptions; h. Making it unreasonably difficult for consumers to cancel subscriptions; and i. Renewing subscriptions without proper notice or consent.

122. As a direct and proximate result of Houzz's unfair and deceptive practices, Plaintiff and Class members have suffered injury in fact and lost money or property.

123. Plaintiff and the Nationwide Class and Consumer Subclass seek all monetary and non-monetary relief allowed by each state's laws, including damages, punitive damages, restitution, injunctive relief, attorneys' fees and costs, and any other relief that is just and proper.

**FIFTH CAUSE OF ACTION**

**Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

124. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

125. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and all Subclasses.

126. Houzz offered subscription services to Plaintiff and Class members.

127. Plaintiff and Class members accepted Houzz's offer by signing up for the subscription services and providing their payment information.

128. Plaintiff and Class members have fully performed their obligations under the contract.

129. Houzz breached its contracts with Plaintiff and Class members by, among other things: a. Failing to provide clear and conspicuous disclosure of all material terms; b. Charging for subscription services beyond the free trial period without proper authorization; and c. Refusing to allow cancellation of the subscription services.

130. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

131. Houzz breached the implied covenant of good faith and fair dealing by, among other things: a. Designing its sign-up process to obscure material terms; b. Emphasizing the "free trial" aspect while deliberately minimizing the 12-month commitment; c. Making it unreasonably difficult for consumers to understand the full terms of the agreement; and d. Refusing to permit cancellation of subscription services.

132. As a direct and proximate result of Houzz's breaches, Plaintiff and Class members have suffered damage in the form of subscription charges they would not have incurred had Houzz adequately disclosed the material terms of the agreement.

## SIXTH CAUSE OF ACTION

## Unjust Enrichment

133. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

134. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and all Subclasses.

135. This claim is pled in the alternative to the breach of contract claim.

136. Houzz has received and retained money belonging to Plaintiff and Class members under circumstances such that it would be inequitable and unjust for Houzz to retain it.

137. Houzz was enriched by money paid by Plaintiff and Class members for subscription services, and Plaintiff and Class members were impoverished by their payment of money to Houzz.

138. There is a connection between Houzz's enrichment and Plaintiff's and Class members' impoverishment.

139. There is no justification for Houzz's retention of Plaintiff's and Class members' money because Houzz obtained their payment through deceptive, misleading, and unlawful conduct.

140. Plaintiff and Class members lack an adequate remedy at law.

141. As a direct and proximate result of Houzz's conduct, Plaintiff and Class members have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Violation of Wisconsin's Automatic Renewal Law, Wis. Stat. § 134.49

142. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

143. Plaintiff brings this claim on behalf of the members of the Wisconsin Small Business Subclass against Defendant.

144. Wisconsin's Automatic Renewal Law, Wis. Stat. § 134.49, governs the automatic renewal of "business contracts," which includes contracts for providing business services for the direct benefit of the end user of the business services.

145. Houzz markets its "Houzz Pro" and “Houzz Essential” as service as a tool for designers, contractors, and other professionals, making it subject to Wisconsin's Automatic Renewal Law when sold to Wisconsin businesses.

146. Under Wis. Stat. § 134.49, if a business contract provides for automatic renewal for a period of more than one month, the seller must disclose the automatic renewal provision at the time the customer enters into the contract.

147. Under Wis. Stat. § 134.49, if a business contract with an initial term of more than one year provides for automatic renewal for more than one year, the seller must provide a written reminder notice to the customer at least 15 days but not more than 60 days before the deadline for the customer to decline renewal.

148. Houzz has violated, and continues to violate, Wis. Stat. § 134.49 by: a. Failing to clearly disclose the automatic renewal provisions of its Houzz Pro and Essential service at the time Wisconsin business customers enter into the contract; b. Failing to provide the required reminder notice to Wisconsin business customers at least 15 days but not more than 60 days before the deadline to decline renewal; c. Making it unreasonably difficult for Wisconsin business customers to cancel their subscriptions; and d. Including provisions in its contracts that require the customer to permit the seller to match any offer that the customer obtains from another seller, in violation of Wis. Stat. § 134.49(2)(b).

149. Under Wis. Stat. § 134.49, Houzz's automatic renewal provisions are not enforceable against Wisconsin business customers, and the contracts should terminate at the end of their current terms.

150. Under Wis. Stat. § 134.49(6), Plaintiff and Class members may bring an action or counterclaim for damages against Houzz, including twice the amount of the damages incurred and reasonable attorney fees.

151. As a direct and proximate result of Houzz's violations of Wisconsin's Automatic Renewal Law, Plaintiff and Class members have suffered injury in fact and lost money or property.

## EIGHTH CAUSE OF ACTION

### Violation of Virginia's Automatic Renewal Law, Chapter 17.8 of Title 59.1 of the Code of Virginia, §§ 59.1-207.45 and 59.1-207.46

152. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

153. Plaintiff brings this claim on behalf of the members of the Virginia Small Business Subclass against Defendant.

154. Virginia's Automatic Renewal Law, codified at Chapter 17.8 of Title 59.1 of the Code of Virginia, specifically §§ 59.1-207.45 and 59.1-207.46, governs automatic renewal or continuous service offers.

155. As amended effective July 1, 2024, Virginia's law expanded its definition of "consumer" to include not only individuals who purchase goods or services for personal, family, or household purposes, but also small businesses that purchase goods or services for business purposes.

156. Houzz's Houzz Pro and Essential service constitutes an automatic renewal or continuous service offer as defined under Virginia law.

157. Under § 59.1-207.46, a supplier making an automatic renewal or continuous service offer to a consumer in Virginia must: a. Present the automatic renewal or continuous service offer terms in a clear and conspicuous manner before the purchasing agreement is fulfilled; b. Obtain the consumer's affirmative consent to the automatic renewal or continuous service offer terms before charging the consumer; and c. Provide an acknowledgment that includes the automatic renewal or continuous service terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by the consumer.

158. Additionally, for automatic renewals that extend beyond a period of 12 months, Houzz must provide a renewal notice to consumers no less than 30 days and no more than 60 days before the cancellation deadline or the end of the current contract term.

159. Houzz has violated, and continues to violate, Virginia's Automatic Renewal Law by: a. Failing to present the automatic renewal terms in a clear and conspicuous manner before the purchasing agreement is fulfilled; b. Charging consumers' payment methods without first obtaining their affirmative consent to the automatic renewal terms; c. Failing to provide an acknowledgment that includes the automatic renewal terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by the consumer; d. Failing to provide the required renewal notice to Virginia consumers between 30 and 60 days before the cancellation deadline; and e. Making it unreasonably difficult for Virginia consumers to cancel their subscriptions.

160. As a direct and proximate result of Houzz's violations of Virginia's Automatic Renewal Law, Plaintiff and Class members have suffered injury in fact and lost money or property.

161. Pursuant to § 59.1-207.49, violations of Virginia's Automatic Renewal Law constitute prohibited practices under the Virginia Consumer Protection Act (§ 59.1-196 et seq.),

and Plaintiff and Class members are entitled to all remedies available thereunder, including damages, restitution, injunctive relief, and attorneys' fees and costs.

**NINTH CAUSE OF ACTION**

**Claim for Permanent Injunction**

162. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

163. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and all Subclasses.

164. Plaintiff and Class members are entitled to a permanent injunction enjoining Defendant's unfair and deceptive automatic renewal and subscription practices.

165. Plaintiff and Class members have suffered irreparable injury from Defendant's conduct. The harm Plaintiff and Class members have suffered is ongoing and will continue without the issuance of a permanent injunction. Specifically, Defendant continues to: a. Enroll consumers in automatically renewing subscription programs without obtaining their affirmative consent to the material terms; b. Fail to provide clear and conspicuous disclosures of automatic renewal terms; c. Charge consumers' payment methods without proper authorization; d. Refuse cancellation requests and force consumers to remain in unwanted 12-month commitments; e. Automatically renew subscriptions for additional 12-month terms when consumers fail to cancel within 30 days of renewal; and f. Engage in deceptive marketing practices related to its "free trial" offers.

166. Remedies available at law, such as monetary damages, are inadequate to compensate for the injuries suffered by Plaintiff and Class members for several reasons: a. The harm is ongoing and recurring, potentially affecting thousands of consumers nationwide on a

continuous basis; b. Many consumers remain unaware that they have been or will be automatically enrolled in unwanted subscription plans; c. Monetary damages alone would not prevent Defendant from continuing its deceptive and unfair practices; and d. The precise amount of future harm is incalculable, as Defendant continues to enroll new consumers in its deceptive subscription programs.

167. The balance of hardships between Plaintiff and Class members on one side and Defendant on the other side favors the issuance of a permanent injunction. Defendant would suffer minimal hardship by being required to comply with existing state and federal laws regarding automatic renewal and subscription practices, while Plaintiff and Class members would continue to suffer significant financial and other harm absent injunctive relief.

168. A permanent injunction is in the public interest because: a. It would enforce compliance with ROSCA, Florida's Automatic Renewal Law, FDUTPA, and similar consumer protection laws in other states; b. It would protect consumers nationwide from deceptive and unfair subscription and billing practices; c. It would promote transparency in online subscription services; and d. It would advance the goals of the FTC and state regulatory agencies that have pursued similar enforcement actions against companies employing comparable practices, as detailed in paragraphs 35-36 of this Complaint.

169. The requested injunction would require Defendant to: a. Clearly and conspicuously disclose all material terms of its automatic renewal programs before obtaining consumers' billing information; b. Obtain consumers' affirmative consent to the automatic renewal terms; c. Provide consumers with an acknowledgment that includes the automatic renewal terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by the consumer; d. Provide simple mechanisms for consumers to cancel their subscriptions; e. Send

timely renewal reminders at least 30 days before renewal that clearly explain the cancellation process; f. Immediately honor all cancellation requests without requiring consumers to complete unwanted subscription terms; g. Refrain from automatically enrolling consumers in new 12-month terms without express informed consent; and h. Cease mischaracterizing the nature of its subscription offerings, including its "free trial" offers.

170. The requested injunction is properly tailored to Defendant's violations and would not require any actions beyond what is already required by applicable state and federal laws.

171. Plaintiff and Class members therefore request that this Court issue a permanent injunction prohibiting Defendant from continuing the unlawful practices described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment against Houzz as follows:

A. Certifying the Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff as the Class Representative and her attorneys as Class Counsel;

B. Declaring that Houzz's conduct violates ROSCA, the FTC Act, Florida's Automatic Renewal Law, FDUTPA, and similar state consumer protection laws;

C. Awarding Plaintiff and the Classes damages, including statutory and punitive damages where applicable, for Houzz's violations of ROSCA, the FTC Act, Florida's Automatic Renewal Law, FDUTPA, and similar state consumer protection laws;

D. Awarding Plaintiff and the Classes restitution of all monies paid to Houzz under the unlawful automatic renewal/continuous service agreements;

E. Awarding Plaintiff and the Classes actual, compensatory, and consequential damages;

F. Awarding Plaintiff and the Classes pre-judgment and post-judgment interest;

G. Ordering that all of Houzz's services provided to Plaintiff and the Classes be deemed an unconditional gift pursuant to applicable state automatic renewal laws;

H. Declaring that Houzz's automatic renewal provision is void and unenforceable pursuant to applicable state and federal laws;

I. Issuing a permanent injunction enjoining Houzz from engaging in the unlawful practices described herein nationwide, similar to the injunctive relief sought by the FTC in its enforcement actions against *Uber* (Case No. 3:25-cv-3477), *Amazon* (Case No. 2:23-cv-00932-JHC), and imposed in the settlement with *Cleo AI* (Case No. 1:25-cv-02594), as well as the remedial measures required in the settlements of *Winston v. Peacock TV LLC* (Case No. 1:23-cv-08191-ALC), *Nelson et al. v. System1, Inc., et al*. (Case No. 37-2023-00045878-CU-BT-CTL), *Leventhal et al. v. Streamlabs LLC* (Case No. 3:22-cv-01330-LB), and *Nichols et al. v. Noom Inc., et al*. (Case No. 1:20-cv-03677-KHP);

J. Awarding Plaintiff and the Classes reasonable attorneys' fees and costs; and

K. Granting such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff, on behalf of herself and the Classes, hereby demands a trial by jury on all issues so triable.

Dated: May 5, 2025

Respectfully submitted,

Timothy Carr, Esquire
*Attorney for Plaintiffs*
4304 Blue Heron Drive
Ponte Vedra Beach, Fl 32082
(516) 289-7585
timcarr81@gmail.com

BY: */s/ Timothy S. Carr*
Florida Bar No. 1047538